FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ MAY 0 7 2012 ★
BROOKLYN OFFICE
D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VLAD GOLDENBERG,

                Petitioner,

   -against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-4005 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Vlad Goldenberg ("Goldenberg"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Mem. (Docket Entry # 1).) After a trial by jury, Goldenberg and a co-defendant were found guilty on all counts. (See 04-CR-159 (NGG) Jury Verdict (Docket Entry # 345).) Goldenberg was sentenced to ninety-seven (97) months' imprisonment, three years of supervised release, and $2,972,840.14 in restitution. (04-CR-159 (NGG) Judgment (Docket Entry # 430).) Goldenberg is currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland. (See Letter (Docket Entry # 17) at 1.) Goldenberg asserts that his defense counsel at trial was constitutionally ineffective when he triggered a provision of a proffer agreement between Goldenberg and the Government that allowed the Government to use Goldenberg's proffer statements against him. (Mem. at 1.) For the reasons set forth below, the court finds that Goldenberg's claim of ineffective assistance of counsel does not warrant habeas relief and his petition is DENIED.

**I.    BACKGROUND**

In March of 2005, Goldenberg met three times with a Special Agent at the U.S. Attorney's office in Brooklyn, New York. (See 04-CR-159 (NGG) Tr. 1525.) During a meeting on March 14, Goldenberg signed a proffer agreement. (Proffer Agreement (Docket Entry # 9-

2).) Paragraph 3 of the agreement states that "the [U.S. Attorney's] Office may use any statements made by [Goldenberg]: . . . (C) as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Goldenberg] at any stage of a criminal prosecution (including but not limited to detention hearing, trial or sentencing). (*Id.*) During these proffer sessions Goldenberg told the Agent that he worked at Delta Asset Management ("Delta") using the name "Mario Casias" on phone calls with certain clients in trying to sell them certain stocks. (*See* Tr. 1525-1528.)

At trial, the Government presented evidence of a "boiler room" securities fraud scheme out of the office of Delta, in which Goldenberg was employed. Goldenberg received kickbacks from stock promoters in exchange for Goldenberg convincing customers to buy promoted stocks at an inflated price. Goldenberg concealed from customers that he was receiving kickbacks, that the prices were inflated, and that he was using a false identity in order to hide that he was not licensed to sell securities by the National Association of Securities Dealers ("NASD").

The Government's evidence was presented through three general categories of witnesses. One group of witnesses consisted of law enforcement and other regulatory officials including an FBI agent, Securities and Exchange Commission staff members, and an attorney of the NASD. The second category of witnesses was made up of the cooperators. These witnesses were former co-defendants of Goldenberg who pleaded guilty to various charges and agreed to cooperate with the Government in the trial against Goldenberg. All of the cooperating witnesses implicated Goldenberg in the fraudulent scheme and corroborated the Government's theory of the case. The third group of witnesses consisted of victims of the stock fraud scheme.

Before summations were made, the Government advised Goldenberg's defense counsel, Allen Lashley ("Lashley"), that should he trigger the proffer agreement waiver in his closing

argument, they could move to reopen their case and submit evidence of the statements made during the proffer sessions. Lashley noted that he understood:

> GOVERNMENT: We're not making a motion at this point to admit his statements 'cause I think Mr. Lashley has, you know, been very good about not triggering the provision, but I do want to just flag the issue that the fact that the government has rested, I want to make sure Mr. Lashley understands that if he were to, in his summation, then do things to open the door, we would move to reopen our case and put the statements in.
> So I just wanted to make sure he's on notice of that and that he doesn't have the misimpression that just because the government's rested he can now then go and make arguments that would amount to opening the door.
>
> THE COURT: Do you understand that?
>
> MR. LASHLEY: Of course, Judge.

(Tr. 1394-95).

Subsequently, Lashley, in his closing argument, stated to the jury facts in contravention to Goldenberg's proffer statements. (*See* Tr. 1516-19.) The Government moved to reopen and the court granted the motion. (*Id.*). The Government then recalled a previous witness, the Agent present for the proffer sessions, to provide testimony on the statements made by Goldenberg during the meetings. (*See id.* 1524-29.)

The jury returned a verdict of guilty as to one count of conspiracy to commit securities fraud and five counts of securities fraud. (*See* 04-CR-159 (NGG) Jury Verdict (Docket Entry # 345).) On November 23, 2005, Goldenberg moved, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for an order setting aside the guilty verdicts and for a new trial. As part of that motion, Goldenberg challenged the court's decision to allow the Government to reopen its case and to admit his proffer statements. The court, citing to United States v. Barrow, 400 F.2d 109, 116 (2d Cir. 2005), held that the waiver was triggered "and as a result the Government was correctly permitted to admit Goldenberg's statements." (04-CR-159 (NGG) Order dated April 4,

3

2006 (Docket Entry # 364) at 14.) All of Goldenberg's Rule 33 motions were denied. (*Id.* at 20). Goldenberg then moved for reconsideration of that order and the court denied the motion. (*See* 04-CR-159 (NGG) Order dated May 5, 2006 (Docket Entry # 370).) Goldenberg was sentenced by the court on June 22, 2007. (*See* 04-CR-159 (NGG) Sentencing (Docket Entry # 429).)

Goldenberg then appealed his verdict and sentence to the Second Circuit which affirmed the judgment of this court. United States v. Pirgousis, 290 Fed. App'x. 388 (2d Cir. 2008). On that appeal, Goldenberg raised, among other issues, an ineffective assistance of counsel claim on the grounds that he received ineffective assistance of counsel when Lashley opened the door to the Government introducing the proffer statements. The Second Circuit declined to review this claim on direct review. *Id.* at 391. Goldenberg then filed the instant § 2255 motion in which he claims that his counsel was constitutionally ineffective. He asserts the same arguments made to the Second Circuit.[1]

## II.   STANDARD OF REVIEW

### A.   § 2255

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." But "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b). In § 2255 proceedings, a petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United

---

[1] Goldenberg also claims that he was denied a fair trial because the court allowed the Government to introduce the proffer statements. The court adheres to the ruling that counsel's statements triggered the waiver provision in the proffer agreement, and so the proffer statements were properly admitted under Barrow. (*See* 04-CR-159 (NGG) Order dated April 4, 2006 (Docket Entry # 364) at 14.)

4

States, 205 F. 3d 36, 40 (2d Cir. 2000). "The pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### B.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right of a criminal defendant to the effective assistance of counsel. U.S. Const. Am. VI; McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."). In order to succeed on an ineffective assistance of counsel claim, a petitioner must pass two prongs: (1) he must show that "counsel's performance was deficient," that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) petitioner must show that, "the deficient performance prejudiced the defense . . . [and produced] errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to the possibility of prejudice affecting the outcome of a trial, the Supreme Court noted that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. In addition, the evidence presented must be considered "in its totality" because some errors may have no effect on relevant evidence, some errors may have "an isolated, trivial effect" on relevant evidence, and "[s]ome errors [may have] a pervasive effect on the inferences to be

5

drawn from evidence, altering the entire evidentiary picture." *Id.* at 695-696.[2] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

## III. DISCUSSION

Goldenberg's claim that trial counsel was ineffective by triggering the waiver provision of the proffer agreement is meritless because he has made now showing of prejudice. Goldenberg bears the burden of demonstrating that there was a reasonable probability that, but for his trial counsel's alleged deficient representation, the result of his trial would have been different. *See* Strickland, 466 U.S. at 694. He has failed to meet this burden. The verdict had overwhelming record support.

Goldenberg argues that without the testimony regarding his proffer statements, the jury would not have found him guilty of the crimes. He argues, citing research on the recency effect, that because this testimony was given at the end of the trial, it had a greater impact on the jurors' decision. (*See* Reply (Docket Entry # 13) at 2-3.) He supports his argument noting further that the jury specifically asked to read this testimony during deliberations.

Goldenberg's argument is unpersuasive given the breadth of evidence presented during his trial. The witness testimony given after the Government reopened its case accounts for four pages out of a total trial transcript of over 1600 pages on which the jury could rely. As noted above, the evidence included the testimony of numerous former co-defendants who acted as cooperating witnesses. These witnesses were Mario Rodriguez (a.k.a. Mario Casias), the stock

---

[2] The *Strickland* test has been described as "rigorous," *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001), and "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

6

broker at Delta whose name was used by Goldenberg during sale calls, Mark Shreyberg, an unlicensed stock broker at Delta, Roman Pasinkovsky, a former manager at Delta, and Nick Pirgousis, the stock promoter who brought the majority of the house stock deals to Delta Asset Management.

The testimony regarding Goldenberg's statements during the proffer sessions concerned Goldenberg's cold calling of investors using the name Mario Casias, which stocks he was pushing, and who some of the investors he called were. (*See* Tr. 1525-1528.) The overwhelming testimony from the other witnesses convinces the court that but for any alleged ineffective assistance of counsel, the jury would have reached the same verdict. For example, Mario Rodriguez testified that Goldenberg used his name to solicit clients and his testimony named the investors who believed they were clients of Rodriguez while they were actually dealing with Goldenberg. (Tr. 197, 175-176, 229-230.) This testimony detailed the securities fraud scheme that Goldenberg and the co-defendants took part in. (*See* Tr. 159-230, 254-336.) Mark Shreyberg testified that he worked with Goldenberg as unlicensed brokers and that the two of them used Mario Rodriguez's name during calls. (Tr. 347-349). This testimony also named some of the stocks that were being pushed on clients. (Tr. 396, 400, 407.) This testimony provided insight into how someone in a similar position as Goldenberg participated in the securities fraud. (*See* Tr. 340-474.) Roman Pasinkovksy's testimony also detailed how Goldenberg used Mario Rodriguez's name to make calls in order to conceal that Goldenberg was unlicensed. (Tr. 514.) His testimony substantiated the Government's assertion that Delta was involved in a broad fraudulent scheme. (*See* Tr. 475-496, 504-617.) Additionally, Nick Pirgousis provided detailed testimony on the circumstances surrounding the securities fraud scheme. (*See* Tr. 700-974, 1005-1067.)

7

The testimony of other cooperating witnesses, the law enforcement and regulatory witnesses, as well as the victims' testimony lend further weight to the finding of no prejudice. *See United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) (no prejudice where multiple cooperating witnesses linked defendant directly to the crime), *see also United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009) (overwhelming evidence precluded finding of prejudice.) Because the court finds no showing of prejudice, it need not analyze the performance prong of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697.

## IV.  CONCLUSION

For the reasons discussed above, Goldenberg's § 2255 motion is DENIED. A certificate of appealability shall not issue. The Clerk of the Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
       May 4, 2012

NICHOLAS G. GARAUFIS  
United States District Judge